IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELLE AVERY BEY,

    *Plaintiff,*

vs.

                                    Case No. 23-2125-EFM-ADM

DAVID HARPER, et al.,

    *Defendant.*

**MEMORANDUM AND ORDER**

Before the Court are three Motions to Dismiss (Docs. 27, 38, and 47) and two Motions for Summary Judgment (Docs. 19 and 23) submitted by the six Defendants in this case. Plaintiff Michelle Avery Bey seeks $41,815,534.89 in compensatory damages and thrice that in punitive damages from Defendants, suing them in their individual and official capacities. Sifting through the quasi-legalese of Plaintiff's Complaint, the essence of her story becomes clear—she doesn't like that Kansas state officials initiated tax foreclosure proceedings against her house and her car. Given the true nature of Plaintiff's claim, the Court concludes that it lacks jurisdiction to hear her case because of the Tax Injunction Act. Thus, the Court dismisses her case with prejudice for lack of jurisdiction.

### I.     Factual and Procedural Background[1]

Plaintiff is a resident of Wyandotte County, living in Kansas City, Kansas. She describes herself as "a Natural flesh and blood living breathing woman, in full life, Moorish American National." And she emphatically states that she is *not* pro se despite proceeding unrepresented, preferring the term "In Propria Persona Sui Juris."[2]

Defendants are mostly government officials, except for Donald Tracy who owns a towing service company. David Harper is the Director of Kansas Division of Property Valuation. Matthew Willard is the Unified Government of Wyandotte County/Kansas City Kansas ("the County")'s County Appraiser. Tyrone Garner is Kansas City, Kansas's mayor. Robert P. Burns is a district judge for the Wyandotte County District Court. Wendy M. Green serves as the County's Senior Counsel.

Plaintiff's grievance against Defendants appears to have begun in 2012 when she alleges that Defendants misclassified her residential property for tax purposes. She apparently refused to pay the taxes due on her property, relying on sovereign citizen type arguments to claim that her residential property is immune from taxes because it is not "commercial property." This reluctance to pay taxes led to the County seizing her car in 2013 with the help of Defendant Tracy's towing service.

---

[1] The facts are taken from Plaintiff's Complaint—considered true for the purposes of this Order—and public records of which this Court may take judicial notice. *See Hastey on behalf of YRC Worldwide, Inc. v. Welch*, 449 F. Supp. 3d 1053, 1060 (D. Kan. 2020) (holding a court may take judicial notice of matters of public record not subject to reasonable dispute); *see also* Fed. R. Evid. 201(b).

[2] Because there is no legal or practical difference between pro se and in propia persona plaintiffs, the Court will humor Plaintiff's distinction within this Order.

In either 2018 or 2019, the County first initiated foreclosure proceedings against Plaintiff's residential property because Plaintiff had still failed to pay taxes owed.  Plaintiff then attempted to remove the case to federal court, attempting "to assert federal question jurisdiction based on federal constitutional defenses to a county tax foreclosure sale."[3]  This Court had no difficulty in swiftly finding that Plaintiff "cannot meet her burden to show that jurisdiction is proper in federal court."[4]  The Court remanded Plaintiff's case to Kansas state court for lack of jurisdiction.[5]

In 2021, the County again initiated foreclosure proceedings against Plaintiff's residence.[6]  Defendant Burns presided as the judge, eventually ordering foreclosure of the tax lien and the sale of Plaintiff's property in March 2022.[7]  On June 27, 2022, Plaintiff submitted an application to redeem her property.  This application was granted after Plaintiff paid $34,934.89 in back taxes, interest, costs, and penalties.

Those are the sole facts of this case.  The rest of Plaintiff's Complaint states legal conclusions—claiming, for example, that Defendants conspired against her to steal her property under the guise of tax law.  She purportedly asserts claims for violation of RICO statutes and the Fourth, Fifth, Sixth, Ninth, Tenth, and Fourteenth Amendments as available under 42 U.S.C. § 1983.  Plaintiff also seeks to hold Defendants accountable in this Court for extortion and robbery under 18 U.S.C. § 1951, deprivation of rights under 18 U.S.C. §§ 241, 242, and mail fraud under

---

[3] *Alvey v. Bey*, 2019 WL 3716363, at *2 (D. Kan. 2019).

[4] *Id.*

[5] *Id.*

[6] *See Unified Government of Wyandotte County/Kansas City, Kansas v. Aceves Zalayes, et al.*, Wyandotte County, Kansas, District Court Case No. 2021-CV-000625 (Tax Sale No. 350).

[7] Beyond mentioning their titles, Plaintiff does not specifically identify the role the other Defendants had in allegedly violating her rights.

18 U.S.C. § 1341. Finally, she alleges multiple violations of various Kansas statutes, both criminal and civil, substantive and procedural.

For her claimed injustices, Plaintiff seeks $41,815,534.89 in compensatory damages and $125,446,604.67 in punitive damages. She also seeks various injunctive relief, including: (1) removing all Defendants their offices; (2) stopping Defendants from abusing their power under color of law; and (3) "due process."

Each of the Defendants, except Tracy, have now moved to dismiss Plaintiff's claims against them. For his part, Tracy moves for summary judgment twice—once at Doc. 19 and again at Doc. 23. Defendants all cite abundant reasons why this Court should dismiss Plaintiff's claims. As discussed more below, one is sufficient—the Tax Injunction Act.

## II.     Legal Standard

**A.     Federal jurisdiction under the Tax Injunction Act**

Federal courts are courts of limited subject matter jurisdiction.[8] As a result, federal courts "may only hear cases when empowered to do so by the Constitution and by act of Congress."[9] In fact, courts have "an independent obligation to raise jurisdictional issues sua sponte where necessary."[10] Because the subject matter jurisdiction of federal courts is limited, "there is a presumption against [the court's] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."[11]

---

[8] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[9] *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (quoting *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004)).

[10] *Alvey*, 2019 WL 3716363, at *1 (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *see also* Fed. R. Civ. P. 12(h)(3) (stating if court determines at any time that it lacks subject-matter jurisdiction, it must dismiss action).

[11] *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

Congress may also specifically divest federal courts of jurisdiction over certain types of cases.[12] As relevant here, the Tax Injunction Act ("TIA") provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[13]  The TIA thus "operates to divest the federal courts of subject matter jurisdiction over claims challenging state taxation procedures where the state courts provide a plain, speedy and efficient remedy."[14]  The Supreme Court has read the TIA as a "broad jurisdictional barrier" that is "first and foremost a vehicle to limit dramatically federal district court jurisdiction."[15]  Not only does it prohibit suits for injunctive relief, but it "bars declaratory relief, and suits for damages as well."[16]

The purpose of the TIA is to "protect the 'federal balance' by permitting states to 'define and elaborate their own laws through their own courts and administrative processes without undue influence from the Federal Judiciary.' "[17]  "Courts must guard against interpretations of the Tax Injunction Act which might defeat its purpose and text."[18]  That said, the TIA is not a "sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration."[19]

---

[12] *See, e.g.*, *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

[13] 28 U.S.C. § 1341.

[14] *Marcus*, 170 F.3d at 1309 (citation and internal quotations omitted).

[15] *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 825–26 (1997) (internal quotations and citation omitted).

[16] *Brooks v. Nance*, 801 F.2d 1237, 1239 (10th Cir. 1986) (further citations omitted).

[17] *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 761 (10th Cir. 2010) (quoting *Farm Credit Servs.*, 520 U.S. at 826).

[18] *Id.* (quoting *Farm Credit Servs.*, 520 U.S. at 827) (brackets omitted).

[19] *Hibbs v. Winn*, 542 U.S. 88, 105 (2004) (quotation omitted).

**B.    In propia persona plaintiffs**

In propia persona complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[20] An in propia persona litigant is entitled to a liberal construction of his pleadings.[21] If a court can reasonably read an in propia persona complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements."[22] However, it is not the proper role of a district court to "assume the role of advocate for the [in propia persona] litigant."[23] For motions to dismiss generally, the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff."[24] "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inferences that the defendant is liable for the misconduct alleged."[25]

### III.    Analysis

Plaintiff's case must be dismissed because the Court lacks jurisdiction to hear her claims. Even liberally construing Plaintiff's Complaint, the only factual allegations remaining after stripping away unsupported legal conclusions and irrelevant legal jargon is that the County initiated foreclosure proceedings against her car and her house. These proceedings stemmed from

---

[20] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[21] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[22] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[23] *Id.*

[24] *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's failure to pay taxes as assessed by the County. Thus, Plaintiff in actuality is seeking this Court to enjoin or provide damages for the County's collection of taxes. This requested relief fundamentally falls afoul of the TIA—something noted by this Court in its previous order denying Plaintiff jurisdiction in federal court.[26]

The burden remains on Plaintiff to show that the TIA does not prevent the Court from exercising jurisdiction. This she has not done. First, it is apparent that the entirety of her Complaint relates to the County's efforts to collect taxes. In responding to Defendant Burns' Motion, Plaintiff claims the TIA does not apply because she "points out how the State's lawful process is being used unlawfully by Defendant in an organized way that shows an ongoing pattern of racketeering activities." This is a far-fetched argument when Plaintiff has asserted claims against nearly all the parties involved in determining the County's "lawful process" to begin with. Thus, the Court has little trouble concluding that Plaintiff's claims are really challenging the County's tax collection procedures, thus bringing her claims under the TIA.[27]

This Court has held multiple times that the tax refund procedures under Kansas, specifically K.S.A. § 79-2005, constitute a plain, speedy, and efficient remedy.[28] In fact, this Court recognized that once again in its prior order remanding Plaintiff's foreclosure case back to state court.[29] Plaintiff knew this, and yet still is attempting to work around this fact by disguising her

---

[26] *See Alvey*, 2019 WL 3716363, at *2 n.2; *see also Zewadski v. City of Reno*, 2006 WL 8441737 (D. Nev. 2006) (holding that plaintiff's RICO claims, while normally not blocked by the TIA, were veiled attempt to challenge tax assessment and thus fell under the TIA's purview)

[27] *See, e.g.*, *Zewadski v. City of Reno*, 2006 WL 8441737, at *7 (D. Nev. 2006) ("Plaintiff's allegations make it clear that his RICO claims are a veiled attempt to challenge or otherwise assail the manner in which the Special Assessment District was created and operated by the Reno City Council. Such complaints concerning the administration of the tax system are barred by the Tax Injunction Act and principles of comity.").

[28] *See, e.g.*, *ANR Pipeline Co. v. Lafaver*, 76 F. Supp. 2d 1142, 1148 (D. Kan. 1999) (listing cases in which this Court has held Kansas law offers a plain, speedy, and efficient remedy to challenge tax procedures).

[29] *See Alvey*, 2019 WL 3716363, at *2 n.2.

claims as seeking damages for violations of constitutional amendments, RICO, and state and federal criminal statutes. Despite Plaintiff's legal contortions, there can be no doubt—the TIA deprives this Court of jurisdiction to hear her claims. Thus, the Court grants each of the Defendants' Motions to Dismiss with prejudice.

Plaintiff argues briefly that she did not receive notice of the original foreclosure proceedings. Theoretically, this procedural due process claim could fall outside the scope of the TIA's jurisdictional prohibition. But another jurisdictional requisite for this claim is standing, which requires Plaintiff to show "(1) injury in fact, (2) causation, and (3) redressability."[30]

Given that Plaintiff successfully redeemed her property without difficulty and alleges facts showing her involvement throughout the foreclosure proceedings, the Court finds that Plaintiff does not plausibly plead facts showing an injury in fact by not receiving notice. Furthermore, she does not allege any facts tying any of the named Defendants to this claim. It follows that she cannot show that they caused this alleged injury—or lack thereof, rather. Thus, to the extent Plaintiff asserts a denial of procedural due process claim unrelated to her tax assessment arguments, the Court dismisses the same for lack of standing. Considering the implausibility of Plaintiff's claims, the Court does not believe allowing Plaintiff to amend her claims would effectuate anything except a further waste of the parties' time and resources. Therefore, this dismissal is with prejudice.[31]

---

[30] *D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 774 (10th Cir. 2010).

[31] *See Lee v. Scafe*, 2008 WL 2266231, at *1 (D. Kan. 2008) ("[A] court may dismiss *sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend the complaint would be futile.") (quoting *Phillips v. Pub. Serv. Co. of N.M.*, 58 F. App'x 407, 409 (10th Cir. 2003)) (further quotations omitted).

**IT IS THEREFORE ORDERED** that Defendants' Motions (Docs. 19, 23, 27, 38, and 47) are **GRANTED** with prejudice.

**IT IS SO ORDERED.**

Dated this 2nd day of August, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE